**FILED**

APR 22 2015

Clerk, U.S. District and
Bankruptcy Courts

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**, *ex rel.*,
**PHILLIP M. ADAMS**, and **PHILLIP M. ADAMS** individually,
3140 KENNINGTON-BURTON LN.
AFTON, WYOMING 83110

Plaintiff,

vs.

**DELL COMPUTER CORPORATION,**
1 DELL WAY
ROUND ROCK, TEXAS 78682

**DELL CORPORATION,**
912 GRANDIN AVE
ROCKVILLE, MARYLAND 20851

**DELL FEDERAL SYSTEMS
CORPORATION,**
1 DELL WAY
ROUND ROCK, TEXAS 78682

**DELL FEDERAL SYSTEMS GP LLC,**
1 DELL WAY
ROUND ROCK, TEXAS 78682

**DELL FEDERAL SYSTEMS L.P.,**
1 DELL WAY
ROUND ROCK, TEXAS 78682

**DELL FINANCIAL SERVICES L.P.,**
1 DELL WAY
ROUND ROCK, TEXAS 78682

**DELL FINANCIAL SERVICES LLC,**
1 DELL WAY STOP RR135,
ROUND ROCK, TEXAS 78682

**DELL INC.,**
1 DELL WAY
ROUND ROCK, TEXAS 78682

**COMPLAINT AND JURY DEMAND**
Case: 1:15-cv-00608
Assigned To : Hogan, Thomas F.
Assign. Date : 4/22/2015
Description: Gen. Civil (E)
**FILED UNDER SEAL**

<u>Not</u> to be filed publicly.

**JURY ACTION**

**RECEIVED**

APR 22 2015      1

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**DELL MARKETING CORPORATION,**
1 DELL WAY
ROUND ROCK, TEXAS 78682

**DELL MARKETING L.P.,**
1 DELL WAY
ROUND ROCK, TEXAS 78682

**DELL MARKETING L.P. - FEDERAL
SA,**
1 DELL WAY
ROUND ROCK, TEXAS 78682

**DELL MARKETING USA L.P.,**
1 DELL WAY
ROUND ROCK, TEXAS 78682

**DELL MARKETING USA GP LLC,**
1 DELL WAY
ROUND ROCK, TEXAS 78682

**DELL USA GP, LLC,**
1 DELL WAY
ROUND ROCK, TEXAS 78682

**DELL USA L.P.,**
1 DELL WAY
ROUND ROCK, TEXAS 78682

**DELLWARE,**
2300 GREENLAWN BLVD
ROUND ROCK, TEXAS 78664

Defendants.

---

## COMPLAINT AND JURY DEMAND

Plaintiffs, for claims against defendants DELL COMPUTER CORPORATION,

DELL CORPORATION, DELL FEDERAL SYSTEMS CORPORATION, DELL

2

FEDERAL SYSTEMS GP LLC, DELL FEDERAL SYSTEMS L.P., DELL

FINANCIAL SERVICES L.P., DELL FINANCIAL SERVICES LLC, DELL, INC.,

DELL MARKETING CORPORATION, DELL MARKETING L.P., DELL

MARKETING L.P. - FEDERAL SA, DELL MARKETING USA L.P., DELL

MARKETING USA GP LLC, DELL USA GP, LLC, DELL USA, L.P., and

DELLWARE, (collectively referred to as the "Dell Defendants") complain and allege as

follows:

## JURISDICTION, VENUE AND PARTIES

1.     This is an action brought pursuant to the Federal False Claims Act (31

U.S.C. Sections 3729 et seq.) through Phillip M. Adams as Relator (hereinafter

"Relator"), pursuant to 31 U.S.C. Section 3730(b) and (h), for and on behalf of the United

States of America and for himself. The Complaint avers that in connection with the

design, engineering, manufacture, assembly, import, distribution, advertisement,

marketing, and direct or indirect sale to the Government of the United States or any of its

Departments, Agencies, Administrations, Bureaus, Services, Boards, Divisions, or any

other of its subdivisions ("Government") of all or part of the Dell Defendants' servers,

desktops, laptops, tablets, and computer-related products ("Computer Systems"), Dell

Defendants directly or indirectly presented false claims for payment to the Government

for Dell Defendants' Computer Systems, and made and used false records and statements

in support of their false claims for payment. Relator for and on behalf of the Government

may be collectively referred to herein as "Plaintiffs."

2.     Jurisdiction of this Court is founded upon 28 U.S.C. Sections 1331 and 1345 and 31 U.S.C. Section 3732(a) because the Government is a party hereto and the claims set forth herein are founded upon the laws of the United States of America.

3.     Venue lies in this District pursuant to 28 U.S.C. Section 1391 and 31 U.S.C. Section 3732(a) because the Dell Defendants conduct business in and made or make, or support the making of, false claims within this District, and because the Government's facilities located in this District regularly process, order, and receive from Dell Defendants Computer Systems that contain the Hardware Trojan security vulnerabilities described below.

4.     Pursuant to 31 U.S.C. Section 3730(a) (2), simultaneous with the *in camera* filing of this Complaint under seal with the United States District Court for the District of Columbia, Relator caused a copy of this Complaint to be delivered to the Attorney General of the United States and to the United States Attorney for the District of Columbia via Certified Mail, Return Receipt Requested.

5.     Relator Phil Adams ("Relator") has discovered false claims made to the U.S. Government by the Dell Defendants concerning computer systems that contain the computer chips listed on Exhibit A. The computer chips listed on Exhibit A, and Intel Bridge Chipsets (Northbridge and Southbridge), AMD/NVidia Bridge Chipsets (Northbridge and Southbridge), SMsC Super I/O chips, ITE Super I/O chips, ASUS Super I/O chips, and Fintek Super I/O chips collectively are called "System Control Chips". The computer systems and computing equipment of the listed Dell Defendants

that contain the System Control Chips listed on Exhibit A are collectively referred to as "Affected Computer Systems".

6.      Relator is an internationally-recognized expert in computer hardware and software systems who has both a D.Sc. in Engineering (Computer Architecture), a Ph.D. in Applied Computer Science (Software), and an SJD (Intellectual Property) who has published numerous books and articles concerning operating systems and computer architecture and who has been awarded numerous patents and patents pending from the United States Patent and Trademark Office for inventions and breakthroughs in the computer area. Relator has been employed by or consulted with IBM, AT&T, Siemens, Unisys, 3Com, Iomega, Novell, and others for purposes of design consultation or problem resolution.

7.      Relator has direct and independent knowledge of the information on which these allegations are based, which direct and independent knowledge was gained in substantial part through his independent investigation and development of unique methods and tools. Relator has advised the Government of the allegations, issues, facts, and circumstances surrounding this lawsuit. Relator and his counsel are continuing to cooperate with the Government and anticipate additional meetings and communications regarding the foregoing information and subject Complaint as part of the ongoing investigation.

8.      Upon information and belief, the Dell Defendants and their respective states of formation and principal offices are as follows:

     a.     DELL COMPUTER CORPORATION is a Delaware corporation, with principal office in Round Rock, Texas.

     b.     DELL CORPORATION is a Maryland corporation, with principal offices in Rockville, Maryland.

     c.     DELL FEDERAL SYSTEMS CORPORATION is a Delaware corporation, with principal office in Round Rock, Texas.

     d.     DELL FEDERAL SYSTEMS GP LLC is a Delaware limited liability company, with principal office in Round Rock, Texas.

     e.     DELL FEDERAL SYSTEMS L.P. is a Delaware limited partnership, with principal office in Round Rock, Texas.

     f.     DELL FINANCIAL SERVICES L.P. is a Delaware limited partnership, with principal office in Round Rock, Texas.

     g.     DELL FINANCIAL SERVICES LLC is a Delaware limited liability company, with principal office in Round Rock, Texas.

     h.     DELL INC. is a Delaware corporation, with principal office in Round Rock, Texas.

     i.     DELL MARKETING CORPORATION is a Delaware corporation, with principal office in Round Rock, Texas.

     j.     DELL MARKETING L.P. is a Texas limited partnership, with principal office in Round Rock, Texas.

k.      DELL MARKETING L.P. - FEDERAL SA is a Texas limited partnership, with principal office in Round Rock, Texas.

l.      DELL MARKETING USA L.P. is a Texas limited partnership, with principal office in Round Rock, Texas.

m.      DELL MARKETING USA GP LLC is a Delaware limited liability company, with principal office in Round Rock, Texas.

n.      DELL USA GP LLC is a Delaware limited liability company, with principal office in Round Rock, Texas.

o.      DELL USA L.P. is a Texas limited partnership, with principal office in Round Rock, Texas.

p.      DELLWARE appears to be a trade name, with principal office in Round Rock, Texas.

9.      To avoid redundant pleading all defendants are severally referred to in the plural, as "Dell Defendants." However the allegations stated against the "Dell Defendants" mean, as to each defendant, each of their respective sales and respective false claims, severally. Provided that, those defendants that control other defendants are jointly and severally liable for the acts and omissions and false claims of their controlled affiliates.

10.     At all times relevant herein, Dell Defendants and Dell Defendants' agents, representatives, assigns, parents and subsidiaries, made false claims for payment to the

Government in the sales of Affected Computer Systems. Furthermore, Dell Defendants and Dell Defendants' agents, representatives, assigns, parents and subsidiaries fraudulently offered for sale and/or directly or indirectly sold to the Government service contracts for such Affected Computer Systems.

## THE UNDISCLOSED THREAT AND AFFECTED COMPUTER SYSTEMS

11.     The Affected Computer Systems sold to the Government contain a hardware security vulnerability, a Hardware Trojan, which was not disclosed to the Government. Relator, through his independent research, discovered this cybersecurity vulnerability in the hardware of the Affected Computer Systems. Relator's independent research demonstrates that the cybersecurity hardware vulnerability can be (1) exploited maliciously to deny the Government use of the Affected Computer Systems based on criteria selected by those exploiting the vulnerability; or (2) triggered unwittingly by users or software developers with the same denial-of-use effect. One variant of the Hardware Trojan may permit the transfer of data to or from Affected Computer Systems through a means that is undocumented and undisclosed by Dell Defendants to the Government. In the remainder of this Complaint, this cybersecurity hardware vulnerability will be referred to as the "Hardware Trojan."

12.     The Hardware Trojan is particularly dangerous because it is implemented through what appear on the surface to be industry standard and required System Control Chips, as previously defined. The Hardware Trojan takes two basic forms with a common attribute. The common attribute is that the System Control Chips incorporate programmable functions that are undisclosed, usually in the form of controller functionality typically related to bridge or I/O functions. These undisclosed functions are

8

typically configured through configuration addresses/registers that are ostensibly not present in the Affected Computer Systems, or reserved and/or undisclosed – ostensibly non-addressable – registers. The following paragraphs 13 - 16 explain one example of how the Hardware Trojan works through a legacy I/O function.

13.     Some of the Affected Computer Systems are sold with specific System Control Chips. The datasheets for these System Control Chips show that legacy functions of older versions of the System Control Chips have been removed from these newer versions of the System Control Chips. For example, the System Control Chips indicate that the legacy floppy disk controller is not present in the newer version of these chips. If one looks at the computer itself, one will see that there are no devices controlled by the legacy functions present in the computer system.  For example, one will see that there is no floppy disk drive.

14.     However, contrary to its engineering specification (datasheet), a portion of the newer System Control Chips does in fact continue to contain controllers and registers for the legacy functions. The System Control Chips contain extra circuitry not disclosed to be present in the chip and not described in the datasheet for the chip. The circuitry associated with these legacy functions may not be bonded out (connected or soldered) to external connections, however, these controllers and their control registers are fully accessible and internally functional.

15.     The datasheets, identification markings on the System Control Chips and visible inspection of the computer systems represent to the Government that the legacy

functions and control circuitry are not present in the computer, but in fact those functions are present.

16.    The circuitry for the legacy functions are present and that circuitry can be exploited. A programmer or hacker knowing that those legacy functions are present will know how to program and active the hidden circuitry.  Such programming will disable Affected Computer Systems on command or upon a specified environmental condition, such as date/time or ambient temperature. It also is possible that a well-intentioned programmer could accidently access the hidden control registers of the undisclosed and undocumented circuitry and disable Affected Computer Systems.  These legacy functions and also be used to transfer data to or from Affected Computer Systems using devices connected to, for example, the parallel port ordinarily used as a printer connection.

17.    In addition to the example in paragraphs 13-16,  the Affected Computer Systems contain registers in System Control Chips other than legacy I/O controllers. Some of those registers are undocumented (undisclosed and, thus, concealed) and/or reserved, or declared non-programmable. But some are, in fact, programmable and can be programmed in a manner and with malicious, denial of use, results similar to the legacy I/O example explained above.

18.    A representative list of Dell products, that are among the Affected Computer Systems, with the Hardware Trojan are identified on Exhibit A attached to and incorporated into this Complaint. The dollar volume of sales of the Affected Computer Systems to the Government, as of a recent point in time, are identified on Exhibits B and C. The detail for a representative sample of the Government contracts under which the

Dell Defendants sell the Affected Computer Systems to the Government is summarized on Exhibit D.

19.     The issue of Hardware Trojans is technically complex and evolving. For clarity in interpreting this Complaint and to assist the reader in understanding the terminology used in this Complaint and scope of the threat posed by the type of Hardware Trojan at issue, Relator has attached Exhibit E, which is Hardware Trojans-Prevention, Detection, Countermeasures (A Literature Review), July 2011. This unclassified article was written by three authors from the Command, Control, Communications and Intelligence Division Defence Science and Technology Organisation of the Australian Government Department of Defence. In this Complaint Relator uses the term Hardware Trojan in the same way and context that that term is used in Exhibit E. This article is not incorporated herein for substance, but is attached to assist the reader in understanding terminology.

20.     While Relator is the original source of this particular Hardware Trojan, Dell has known about the *generic* problem of Hardware Trojans for years. Testing and processes exist to identify some Hardware Trojans that may exist in hardware. Dell has access to the specifications for the Affected Computer Systems and family and for the System Control Chips. Dell also configured the Affected Computer Systems and would have observed the presence of interactions that would have put it on notice of problematic chip characteristics. Accordingly, Dell had actual knowledge about the Hardware Trojan in the Affected Computer Systems, or, alternatively, acted in deliberate ignorance of the Hardware Trojan, or, alternatively, acted in reckless disregard of the truth or falsity of the existence of the Hardware Trojan.

**CAUSE OF ACTION**
**(Violations of the Federal False Claims Act)**

21.     The Government agencies that purchased the Affected Computer Systems operate under a mandate to assure the security of their and their contractors' information technology systems, under the Federal Acquisition Regulation ("FAR"), the Federal Information Security Management Act (" FISMA"), and similar regulations of particular Government agencies that apply information technology. For example see 48 CFR 7.103 (FAR 7.103) that requires all agency heads or designee to ensure that "information technology acquisitions comply with the information technology security requirements in the Federal Information Security Management Act (44 U.S.C. 3544), OMB's implementing policies including Appendix III of OMB Circular A-130, and guidance and standards from the Department of Commerce's National Institute of Standards and Technology." Software and hardware vulnerability introduced through the "IT Supply Chain," such as the Hardware Trojan, is recognized by the Government as a serious risk. Relator has attached as Exhibit F the United States Government Accountability Office ("GAO") Report dated March 2012 entitled "IT Supply Chain National Security Related Agencies Need To Better Address Risks" which is additional evidence of the Government's recognition of the risk. Without limitation see Tables 1 and 2 and accompanying text on pages 12 – 13 and 15 – 17. This report is not incorporated herein for substance, but is attached to assist the reader in understanding the risks associate with the IT Supply Chain and to further evidence that the Government recognizes this risk as a real threat. The "minimum" security requirements for agencies of the Government require Government agencies to "correct deficiencies and reduce or eliminate vulnerabilities" in their information systems. FIPS 200 ¶3. For example EPA Information Procedures CIO

Approval Date of 08/06/2012 at SA-12 (i), page 15 requires for "high information systems" "Vulnerabilities must be identified, managed, *and eliminated* at each phase of the life cycle." (Emphasis added) The Hardware Trojan renders the Affected Computer Systems unsuitable for purchase and *use* by the Government. The Affected Computer Systems are worthless to the Government.

22.     The Government would not have paid the claims for the Affected Computer Systems had it known of the Hardware Trojan.

23.     Dell Defendants sold the United States Government Affected Computer Systems with the Hardware Trojan, as indicated by Exhibit B. Exhibit B, however, is only a representative sample of Affected Computer Systems sold to the Government by the Dell Defendants. A longer list of example models is provided on Exhibit C. Representative contracts under which the Affected Computer Systems were sold are identified on Exhibit D.

24.     The Hardware Trojan can be accessed and activated as a kill switch in numerous ways, some disabling single or select units and some disabling large numbers of units. Those delivery and activation methods which can simultaneously disable large numbers of Affected Computer System include: attacking servers that contain the Hardware Trojan; and boot level instructions activated by date and time or temperature. These mass access points can be triggered by numerous methods including viruses, software updates, and patches. Also a human enemy or activist planted inside or outside the Government can manually trigger these mass access points. For example, an enemy or activist could infiltrate the IT department of the Government agency or Government

vendor. Further foreign vendors in the supply chain for the System Control Chips or the Affected Computers Systems could embed activation conditions.

25.     The potential value of the Government's claims against the Dell Defendants is conservatively estimated at somewhere between $500,000,000.00 and $2,000,000,000.00, as indicated in Exhibits B and C.

26.     Dell Computer Systems have been purchased by nearly every Government department, including the General Service Administration, Department of Defense, Department of Homeland Security, the Department of Justice, NASA, Department of the Interior, Social Security Administration, USAID, Department of Education, Department of Veteran's Affairs, Health and Human Services, Department of Transportation, etc.

27.     Relator independently discovered this Hardware Trojan through an independent research effort using specialized hardware and specially written testing software written by Relator.  This hardware and software was developed and used exclusively by Relator to identify the System Control Chips previously identified.

28.     The System Control Chips identified on Exhibit A and the Affected Computer Systems listed on Exhibit B have been tested by Relator and Relator has verified that they contain the Hardware Trojan. Examples of other as yet untested Affected Computer Systems which contain System Control Chips carrying the Hardware Trojan are identified on Exhibit C.

29.     Dell Defendants have made numerous false claims to the Government about the Affected Computer Systems, without limitation, the following false claims, any one of which supports this action against the Dell Defendants:

a.  Dell Defendants presented invoices for payment and was required to certify the description of the item sold and for which Dell Defendants seek payment. With the Hardware Trojan they were not what Dell Defendants certified. Computers with Hardware Trojans are a dangerous version of "counterfeit" goods. For example see :http://chipsecurity.org/2012/02/trojan-circuit/. "A Trojan chip, sometimes referred to as a "hardware Trojan," is not merely a counterfeit; it is a chip that works as advertised, but with something 'extra.' A Trojan chip is typically a packaged product that looks and functions exactly as designed—possibly even from the original manufacturer.  However, buried within the Trojan chip's circuitry is malicious functionality designed to steal, control, or damage." The datasheets, identification markings on the System Control Chips and visible inspection of the computer systems represent to the Government that the legacy functions and control circuitry are not present in the computer, but in fact those functions are present. What Dell Defendants certified as being a particular model computer was not one that operated "as advertised" but one that contained something "extra" and dangerous. Relator's testing, proprietary programs, and investigation has identified the System Control Chips and Affected

Computer Systems as having the described Hardware Trojan, a surprising fact not otherwise publically known or known by the Government. Dell Defendants would not be paid except for these certifications. As to the Affected Computer Systems, those certifications are false, making the claim false.

b. Expressly separate and apart from the Dell Defendants' express product warranty, the Dell Defendants certified that the Affected Computer Systems were <u>merchantable and fit for use for the particular purpose described in the contract</u>. FAR 52.212-4(o). (emphasis added) Further Dell's own "TERMS AND CONDITIONS APPLICABLE TO PURCHASE OF GENERAL PURPOSE COMMERCIAL INFORMATION TECHNOLOGY EQUIPMENT" certifies that "All equipment furnished hereunder must satisfactorily perform the function for which it is intended." This certification and the truth of it was a material part of the contracts and material to the Government's decision to pay. However, this certification was false, making the claim a false claim.

c. The Dell Defendants certified compliance with the Department of Defensae ("DOD") Counterfeit Prevention regulation, 79 Fed. Reg. 26,092 (and its predecessors), as to Affected Computer Systems covered by that regulation (or its predecessors). This certification and the truth of it was a material part of the contracts and material to the

Government's decision to pay. However, this certification was false, making the claim a false claim.

d.  Beginning with its initial bid or response to a solicitation and continuing to the final invoice the Affected Computer Systems were sold and purchased in the context of the Government contracting procedure for purchase of information technology evidenced by Defense Federal Acquisition Regulations System ("DFARS"), FAR , FISMA, Federal Desktop Core Configuration ("FDCC"), related statutes and regulations, 48 CFR 1252.239-70 through 48 CFR 1252.239-72, 48 CFR Part 200, NIST guidelines, OMB M-07-11, OMB M-07-18, FIPS 200, and similar regulations of particular Government agencies that apply to information technology. Therefore and also with reference to ¶¶19 and 21, computers with a Hardware Trojan are worthless to the Government. Thus, regardless of any false certifications, Dell Defendants thus billed the Government for worthless products, which the Government would not have otherwise purchased.

e.  Beginning with its initial bid or response to a solicitation and continuing to the final invoice Dell Defendants falsely certified that their products sold to the Government conform to the standards of the Federal Standards Program ("FIPS"), which include the FIPS Minimum Security Requirements for Federal Information Systems (FIPS 200). For example, Dell contract GS-35F-0884P, ¶¶13 and 14

provide that product acquisition under this contract "must comply with the provisions of" FIPS and *prohibit* the Government from acquiring products under the contract that do not conform to FIPS. The certification of conformity with FIPS 200 is a certification by the Dell Defendants that the products sold to the Government by the Dell Defendants have system and information integrity as required by FIPS 200 ¶3, clause (xvii). System and information integrity requires the product to protect against malicious code and protect against modification or destruction of the system and information on it. *See*, FIPS 200 ¶3, definition of "system and information integrity" and FIPS 200 Appendix A, page 7 definition of "information security" and "integrity." As to the Affected Computer Systems, those certifications are false, making the claim false.

f.   The Hardware Trojan uses "reserved" and/or undisclosed registers to effect the vulnerability and activate the kill switch. PCI specifications, as well as other computer-industry standards do not permit using "reserved" and/or undisclosed registers in the manner in which the Hardware Trojan makes use of "reserved" and/or undisclosed registers. E.g. PCI Local Bus Specifications: rev. 2.2, page xix; rev. 2.3, page xiv. Also e.g.  PCI Express Base Specification rev. 3.0 page 34. Beginning with its initial bid or response to a solicitation and continuing to the final invoice Dell Defendants falsely certified that

the Affected Computers were PCI-compliant.  This certification was false, making the claim false.

g.  Beginning with its initial bid or response to a solicitation and continuing to the final invoice Dell Defendants falsely certified  that their products sold to the Government "are fully functional and operate correctly as intended" [OMB M07-07-18] on systems using the Federal Desktop Core Configuration ("FDCC"), as defined in OMB M-07-11. The Affected Computer Systems are sold with an operating system covered by the FDCC. The Affected Computer Systems expressly are part of the "system" covered by the FDCC certification, as defined in OMB M-07-18. Dell Defendants would not be paid except for this certification. The Hardware Trojan inherently compromises the system's ability to operate applications effectively using the FDCC. As to the Affected Computer Systems, those certifications are false, making the claim false.

h.  Beginning with its initial bid or response to a solicitation and continuing to the final invoice the Dell Defendants falsely certified that the Dell Defendants deliver only products that include internal components "that directly support the provided platforms." E.g. Dell Contract W91QUZ-06-D-0002, pages 206 and 210 and Dell Contract W91QUZ-07-D-0006 pages 7 – 9, 19 and 20. Dell Defendants would not be paid except for these certifications. The subject internal components in the Affected Computer Systems, that include the

19

Hardware Trojan in their internal components, not only do not "support" the purchased platform, such components undermine the purchased platform, rendering it dangerous and useless for Government work. As to the Affected Computer Systems, those certifications are false, making the claim false.

i.   In its contracts with the Government (e.g. Contract # GS-35F-4076) and continuing to the final invoice Dell Defendants falsely certified that the Affected Computer Systems satisfactorily perform the function for which it is intended. Dell Defendants would not be paid except for these certifications. As to the Affected Computer Systems, those certifications are false, making the claim false.

j.   Beginning with its initial bid or response to a solicitation and continuing to the final invoice the Dell Defendants certify that they have provided full, accurate, and complete information. 48 CFR 52.214-4. That certification is material to the Government's decision to pay. That certification is false, making the claim false.

k.   Dell Defendants were/are fully cognizant of their obligation under 48 CFR § 3452.239-73(a) (1) as "[t]he provider of information technology" to "certify applications are fully functional and operate correctly as intended on systems using the Federal desktop core configuration (FDCC)" "in all solicitations and contracts where software will be developed, maintained, or operated on any system

using the FDCC configuration, as mandated by 48 CFR §3439.703.
Dell Defendants' false certifications contravening the above Federal
Acquisition Regulations would bar the Government from accepting the
Affected Computer Systems.  Furthermore, Dell Defendants would not
be paid except for these certifications. As to the Affected Computer
Systems, those certifications are false, making the claim false.

l.  Beginning with its initial bid or response to a solicitation and
continuing to the final invoice and in its contracts with the
Government (e.g. Dell Contract # GS-35F-4076) and continuing to the
final invoice Dell Defendants falsely certified that it would tender only
goods that conform to the Dell Defendants' technical representations
concerning performance, total system performance and configuration,
physical, design and/or functional characteristics and capabilities
submitted in response to requirements which results in orders under
the contract, including, but not limited to, any representations made in
any literature, description, drawings and specifications furnished by
the Dell Defendants. Dell Defendants would not be paid except for
these certifications. As to the Affected Computer Systems, those
certifications are false, making the claim false.

m. The Dell Defendants presented invoices for payment and were
required to certify the description of the item sold and for which the
Dell Defendants seek payment. A Hardware Trojan chip is typically a
packaged product that looks and functions exactly as designed—

possibly even from the original manufacturer. What the Dell

Defendants certified as being a particular model computer was not one

that operated "as advertised" but one that contained something "extra"

and dangerous. As to the Affected Computer Systems, those

certifications are false, making the claim false. Thus, Dell Defendants,

which the Government would not have otherwise paid for.

n. Dell Defendants mislabeled the Affected Computer Systems whereby

Dell Defendants hid System Control Chips that constitute the

Hardware Trojan. Non-disclosure agreements with Not-To-Sue

clauses were instituted to bar access to System Control Chips'

datasheets and technical information by the Government. But for the

misbranding the Government would not have paid for these mislabeled

Affected Computer Systems, making the claims false.

o. The Dell Defendants certified that the sale and delivery of the Affected

Computer Systems were in compliance "with all applicable Federal,

State and local laws, executive orders, rules and regulations applicable

to [their] performance under [each of the contracts at issue]." FAR

52.212-4(q). This certification and the truth of it was a material part of

the contracts and material to the Government's decision to pay.

However, this certification was false, making the claim a false claim.

As but three examples, the Dell Defendants actions constitute a

violation of 18 USC §1030(a) (5) and §1030(b), and 18 USC §1362, as

well as other statutes, executive orders, rules and regulations cited
above.

30.     For all false claims listed in ¶29, the Dell Defendants had actual
knowledge that each claim was false, or, alternatively, Dell Defendants acted in
deliberate ignorance, or, alternatively, acted in reckless disregard of the truth or falsity of
the claim. This paragraph is incorporated by reference into each and every sub-paragraph
of ¶29 above.

31.     For all false certifications listed in ¶29, such certifications were express, or
alternatively were implied. This paragraph is incorporated by reference into each and
every sub-paragraph of ¶29 above which pleads a certification.

32.     With respect to the Affected Computer Systems, The Dell Defendants
made certifications that were conditions of payment several times during the purchase
process and continuing until the last invoice was paid. The certifications were false *when
made*. Sometimes the express or implied certifications made in a contract might not be
false when made even if not actually satisfied later. It that case the Dell Defendants may
contend that those are mere breaches of contract and not false claims. Even if that
position is correct (which Plaintiffs dispute), however, the express and implied
certifications identified in paragraph 29 and sub-parts above were false with respect to
the Affected Computer Systems, when the contract was signed and continuing thereafter
until the final invoice is paid, because the Affected Computer Systems did not, on the day
the contract was signed or any following day, conform to those certifications.
Accordingly, in addition to the other false claims pleaded herein, the express and implied

certifications made in the Dell Defendant's contracts were conditions to payment and false claims on the day the contracts were signed and continuing thereafter until the final invoice is paid.

33.     Underlying each of the express and implied false claims or certifications (or both) listed in the subparagraphs of ¶29 is that the Government would not have paid had it had known of the Hardware Trojan.

34.     Without limitation, Exhibit D summarizes some of the contracts by which the Dell Defendants sold the Affected Computer Systems to the Government. Exhibit D also summarizes some pertinent details of those contracts.

35.     Affected Computer Systems with the Hardware Trojan actually were sold to and paid for by the Government based on the false claims herein described. For example, see Exhibits B – D.

36.     Dell Defendants sold thousands of Affected Computer Systems to the Government. Exhibits B – D. The Government paid for those Affected Computer Systems. Exhibits B – D. Every time Dell Defendants sold one of the Affected Computer Systems to the Government Dell Defendants necessarily provided false certifications and false claims identified in paragraphs 29 above.

37.     Dell Defendants were required to make these certifications to receive payment from the Government and, in fact, were paid based on their respective false claims and fraudulent behavior. Exhibits B – D.

38.     Exhibits A- D evidence the means and scheme by the Dell Defendants to submit false claims, and where and to whom they were submitted. Exhibits B - D are proof (or alternatively are reliable indicia for a strong inference) that false claims were actually submitted and paid. Exhibits A – D, in conjunction with the allegations in this Complaint, show the "who, what, when, where, and how" of the fraud perpetrated by the Dell Defendants.

39.     In short Dell Defendants had a scheme and process to submit false claims and there is direct evidence (or, alternatively, a strong inference) that claims were actually submitted and paid.

40.     Dell Defendants thus made false statements and engaged in fraudulent conduct. Dell Defendants did so knowingly as defined in 31 USC §3729(b) (1) (A). The fraudulent representations, fraudulent conduct and statements were material. The fraudulent representations, fraudulent conduct and statements caused the Government to pay out money.

41.     The Dell Defendants had actual knowledge of the Hardware Trojan and of its potential to cause catastrophic damage to the Government, or acted in deliberate ignorance, or acted in reckless disregard of the existence and nature of the Hardware Trojan.

42.     In committing the acts and omissions described above, Dell Defendants violated, and will through some date subsequent to the filing of this Complaint (perhaps through the date of trial) continue to violate, Section 3729(a)(1)(A)  of the Federal False

Claims Act by presenting fraudulent claims for payment to the Government as pleaded above.

43.     In addition, Dell Defendants have separately violated, and will through some date subsequent to the filing of this Complaint (perhaps through the date of trial) continue to violate, Section 3729(a) (1) (B) of the Federal False Claims Act by knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim, as pleaded above.

44.     As pleaded above, Relator believes that the facts pleaded above along with the attached and referenced documents and testing is direct evidence (or, alternatively, a strong inference) of the "who, what, when, where, and how" of the fraud perpetrated by the Dell Defendants. Alternatively, Relator pleads same on information and belief.

   a.  The basis for Relator's beliefs are: his experience and expertise, including his personal knowledge and experience with the ODM process used by Dell Defendants and similarly situated companies to procure and offer computer systems for sale; his actual testing of the System Control Chips and exemplars of the Affected Computer Systems; his review of sample specifications (data sheets) for the chip family of the System Control Chips; his review of the Dell Defendant's contracts identified in this Complaint and in the Exhibits which were available to him; his knowledge and review of the procurement and security laws, regulations, and standards identified in this Complaint and application of same to the Hardware Trojans he has

personally discovered in the System Control Chips and the Affected

Computer Systems; and the scheme and process discernable from the

information available concerning the Government contracts with the

Dell Defendants, and the purchases and payments made by the

Government to the Dell Defendants.

b. Relator lacked and lacks access to the documents needed to plead with

greater specificity than pleaded above, because they are in the control

of the Dell Defendants.

c. The known documents in control of the Dell Defendants include: the

actual specifications for all of the System Control Chips and Affected

Computer Systems; engineering change notices for the System Control

Chips and Affected Computer Systems; testing documents for the

System Control Chips and Affected Computer Systems; documents

used in writing and testing the BIOS for the Affected Computer

Systems; actual solicitations and bids and all contracts incident to the

Government's purchase of the Affected Computer Systems; invoices

and records of payments for the Affected Computer Systems; ODM or

similar agreements between the Dell Defendants on one hand and

third-parties supplying systems or component parts containing the

System Control Chips on the other hand; Non-disclosure, indemnity,

"no lawsuit" or similar secrecy and risk shifting agreements between

the Dell Defendants on one hand and third-parties supplying systems

or component parts containing the System Control Chips on the other

27

hand; design documents including schematics, and VHDL, Verilog, or similar design files for the System Control Chips; and the usual and expected internal memorandum and communications of the Dell Defendants and of the Dell Defendants with the third party designers, testers and suppliers of the System Control Chips, components containing the System Control Chips, or component parts of the System Control Chips and with the Government; and the Computer systems of the Dell Defendants that store or contain data regarding the foregoing.

d.  Those documents and information should establish: that the Dell Defendants actually knew of the Hardware Trojan or had enough information to investigate same but did not and acted in deliberate ignorance of the Hardware Trojan, or, alternatively, acted in reckless disregard of it; the terms and conditions of all contract documents for all Dell Defendants' contracts from solicitation to payment; that the Dell Defendants did in fact make certifications and claims for payment and were paid; the number of claims and the amount of claims and payments; that the Affected Computer Systems were worthless to the Government who would not have paid for them if the Hardware Trojan was disclosed to it; the names of individuals in the employee of the Dell Defendants and the Government who personally performed the transactions pleaded herein. This paragraph, read in conjunction with this complaint as a whole and the exhibits, which are incorporated by

reference, comply with D.C. Circuit pleading requirements, and does
not limit discoverable information and documents.

45.     To the extent, if any, that this case is deemed to be a related action and
that facts set forth herein are deemed to be the same as facts underlying an existing *qui
tam*, False Claims Act action pending at the time of filing of this action, as prohibited in
31 U.S.C. Section 2030(b)(5), then said factual allegations in common with the pending
action, which would cause this to be a related cause of action, are hereby expressly
excluded from this action, but only to the limited extent necessary to exclude such
preemption.

46.     Furthermore, to the extent that the allegations or transactions set forth
herein are the subject of a civil suit or an administrative civil money penalty proceeding
in which the Government is already a party, if any such proceedings exist, then the
allegations or transactions referred to herein which are the subject of any such civil suit
or administrative civil money penalty proceeding are expressly excluded here from, but
only for the specific time periods, specific companies, and specific allegations or
transactions as necessary.

47.     Pursuant to 31 U.S.C. Section 3729(a)(1)(A) and (B) and (G), Dell
Defendants are liable to the Government for a civil penalty of not less than $5,000, and
not more than $10,000 (as adjusted by the Federal Civil Penalties Inflation Adjustment
Act of 1990), for each violation of the False Claims Act, plus 3 times the amount of
damages which the Government sustains.

WHEREFORE, Plaintiffs pray for judgment against Dell Defendants as follows:

1.   For judgment for all losses and damages that have been, or will be, sustained by the United States of America as a result of the false claims;

2.   Triple the amount of such losses or damages pursuant to 31 U.S.C. Section 3729;

3.   Civil penalties of not less than $5,000, or more than $10,000 (as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990), for each and every violation of the False Claims Act, in an amount which is not yet precisely known;

4.   For reasonable attorneys' fees and costs;

5.   For Relator's reasonable costs and expenses; and

6.     For such other and further relief as the Court deems just and equitable.

DATED this *20* day of April, 2015.

Respectfully submitted,

James E. Sharp (Bar # 155341)
Stephen W. Grafman (Bar # 329129)
SHARP & ASSOCIATES, PLLC
1215 19TH Street, N.W.
Washington, D.C.  20036
(202) 467-4114 phone
jsharp@sharp-assoc.com; sgrafman@sharp-assoc.com

Counsel for Plaintiff United States of America
*ex rel.,*
Phillip M. Adams, and Philip M. Adams individually

**Additional counsel who plan to seek admission :**

Gilbert I. Low
TX SB No. 12619000
Gary Neale Reger
TX SB No. 16733200
Orgain, Bell & Tucker, L.L.P.
470 Orleans, 4th floor
P.O. Box 1751
Beaumont, Texas  77704-1751
Telephone: (409) 838-6412
Facsimile:  (409) 838-6959
Emails: kvoth@obt.com; gnr@obt.com

Wayne A. Reaud
TX SB No. 16642500
Reaud & Associates
801 Laurel Street
Beaumont, Texas  77701
Telephone: (409) 838-1000
Facsimile:  (409) 833-8236
Email: mreynolds@rmqlawfirm.com

Gregory D. Phillips (UT 4645)
Phillips Ryther & Winchester, LLC
124 South 600 East
Salt Lake City, Utah  84102
Telephone:  (801) 935-4935
Email: gdp@prwlawfirm.com

Ezekiel R. Dumke IV (UT 12501)
Jacob R. Adams (NY 4751459)
Dumke Law, LLP
560 E. 500 S., Suite 200
Salt Lake City, Utah 84102
Telephone: (801) 935-4929
Facsimile:  (801) 359-8351
Emails: edumke@dumkelaw.com;
JRA@dumkelaw.com

L. DeWayne Layfield
TX SB No. 12065710
Law Office of L. DeWayne Layfield
P.O. Box 3829
Beaumont, Texas  77704-3829
Telephone: (409) 832-1891
Facsimile:  (409) 832-2156
Email: dewayne@layfieldlaw.com

RELATOR DEMANDS A TRIAL BY JURY

James E. Sharp

Dell FCA Complaint D19e.docx