UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. PHILLIP M. ADAMS,<br><br>                    Plaintiff/Relator,<br><br>        v.<br><br>DELL COMPUTER CORPORATION, *et al.*,<br><br>                    Defendants. | Civil Action No. 15-cv-608 (TFH) |

MEMORANDUM OPINION

Plaintiff-Relator Phillip M. Adams brings this *qui tam* lawsuit on behalf of himself and the United States of America against Dell Computer Corporation and fifteen other Dell entities (collectively, Dell or Defendants).  Mr. Adams alleges that Dell violated the False Claims Act (FCA), 31 U.S.C. § 3729, *et seq.*, by knowingly selling hundreds of millions of dollars of computer systems to the United States government that contained undisclosed security vulnerabilities.  Mr. Adams labels those vulnerabilities as a "Hardware Trojan."  The United States declined to intervene in the litigation and Dell moved to dismiss for failure to state a claim under Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6).  For the following reasons, the Court will grant Defendants' motion and dismiss the amended complaint.

I. BACKGROUND

Dell is a "multinational company that delivers worldwide innovative technology, business solutions and services."  Mot. to Dismiss First Am. Compl. (Mot.) [Dkt. 59] at 10.[1]

---

[1] Page references to Defendants' motion to dismiss refer to the electronic case filing (ECF) page number.

Mr. Adams is "an internationally-recognized expert in computer hardware and software systems" who "has published numerous books and articles concerning operating systems and computer architecture and has been awarded numerous patents and patents pending from the United States Patent and Trademark Office for inventions and breakthroughs in the computer area." Am. Compl. [Dkt. 49] ¶ 5(a). Mr. Adams alleges that he conducted an "independent investigation" into the existence of Hardware Trojans[2] in computer systems sold by Dell to the United States government. *Id*. ¶¶ 5(b), 22. During his investigation, he allegedly created "unique methods and tools" to identify the Hardware Trojans. *Id*. ¶ 5(b). The Hardware Trojan is a "cybersecurity hardware vulnerability [that] can be (1) exploited maliciously to deny the Government use of the Affected Computer Systems based on criteria selected by those exploiting the vulnerability; or (2) triggered unwittingly by users or software developers with the same denial-of-use effect." *Id*. ¶ 9.

      According to Mr. Adams, Dell "directly or indirectly presented false claims for payment to the Government for Dell Defendants' Affected Computer Systems . . . and made and used false records and statements in support of their false claims for payment." *Id*. ¶ 7. Specifically, the Affected Computer Systems sold by Dell included system control chips that included legacy functions, which the United States government did not want or need the system control chip to contain. *Id*. ¶ 12. An example of a legacy system is programing to recognize a floppy disk drive. Even though government computers no longer contain or have the need to connect to floppy disk drives, the system control chip includes a legacy floppy disk controller. That legacy floppy disk controller is accessible and functional, but not used by the Affected Computer

---

[2] Hardware Trojan is a term used and defined by Mr. Adams. The Court uses the term because it reflects the language of the Amended Complaint.

System because no floppy disk is present. Mr. Adams contends that these unused, but available, functions permit exploitation of the Affected Computer System. *Id*. ¶ 15.

On April 22, 2015, Mr. Adams filed his *qui tam* complaint against Dell. Compl. [Dkt. 1]. The United States declined to intervene on September 23, 2015. Notice of Declination [Dkt. 5]. Mr. Adams filed an amended complaint on July 29, 2016. Am. Compl. [Dkt. 49]. On September 19, 2016, Defendants moved to dismiss. *See* Mot. Mr. Adams opposed and Defendants replied. *See* Mem. of P. & A.'s in Opp'n to Mot. to Dismiss First Am. Compl. (Opp'n) [Dkt. 62]; Reply Mem. of P. & A.'s in Supp. of Mot. to Dismiss First Am. Compl. (Reply) [Dkt. 64]. On April 26, 2017, the Court heard oral argument on the motion. Since the motion hearing, each party has filed a notice of supplemental authority which prompted an opposition and reply.[3] The motion is ripe for review.

## II.   LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(6)

Rule 8 of the Federal Rules of Civil Procedure mandates that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a party invokes Rule 12(b)(6) to challenge a complaint for failing to state a claim for relief pursuant to Rule 8, the Court must assess the complaint to determine whether it contains sufficient facts that, when accepted as true, evidence a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556

---

[3] *See* Notice of Suppl. Authority Relevant to the Dell Defs.' Mot. to Dismiss First Am. Compl. [Dkt. 65]; Relator's Response to Dell's Notice of Suppl. Authority and Notice of Additional Suppl. Authority [Dkt. 66]; The Dell Defs.' Resp. to Relator's Notice of Additional Suppl. Authority [Dkt. 67]; Relator's Notice of Suppl. Authority [Dkt. 69]; The Dell Defs.' Resp. to Relator's June 22, 2020, Notice of Suppl. Authority [Dkt. 70]; Relator's Reply to the Dell Defs.' Resp. to Relator's June 22, 2020 Notice of Suppl. Authority [Dkt. 72].

U.S. 662, 679 (2009). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. But a court need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 556 U.S. at 678. "In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006).

### B. Motion to Dismiss under Rule 9(b)

The FCA is an anti-fraud statute, so this Circuit and every other circuit to consider the issue has held that complaints brought under the FCA must comply with Rule 9(b)'s pleading requirements. *United States ex rel. Totten v. Bombardier Corp. (Totten I)*, 286 F.3d 542, 551-52 (D.C. Cir. 2002) (citing *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001); *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997); *Gold v. Morrison-Knudsen Co.*, 68 F.3d 1475, 1476-77 (2d Cir. 1995)). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

The D.C. Circuit has explained that "'the pleader must state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a

consequence of the fraud.'" *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994) (quoting *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981)); *see also United States ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004); *Totten I*, 286 F.3d at 552.

### III.   ANALYSIS[4]

Mr. Adams brings this False Claims Act case under both a presentment and false statement theory. *See* Am. Compl. ¶¶ 54-55. He alleges both that Dell presented a false claim for payment, 31 U.S.C. § 3729(a)(1)(A), and that Dell made a "false statement," *id*. § 3729(a)(1)(B). A claim brought under § 3729(a)(1)(A) has three elements: "(1) the defendant submitted a claim [for payment] to the government, (2) the claim was false, and (3) the defendant knew the claim was false." *United States ex rel. Folliard v. CDW Tech. Servs., Inc.*, 722 F. Supp. 2d 20, 26 (D.D.C. 2010). A claim under (a)(1)(B) requires that the defendant "made a false *statement* to the government, as opposed to the submission of a false claim for payment." *Pencheng Si v. Laogai Research Found.*, 71 F. Supp. 3d 73, 87 (D.D.C. 2014) (emphasis in original); *see also United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 501 (D.C. Cir. 2004) (finding that subsection (a)(1)(B) is "designed to prevent those who make false records or statements to get claims paid or approved from escaping liability solely on the ground that they did not *themselves* present a claim for payment or approval") (emphasis in original).

---

[4] The Court has jurisdiction over this case because it arises under the laws of the United States, specifically the False Claims Act, 31 U.S.C. § 3729 *et seq*, *see* 28 U.S.C. § 1331; and because the United States is a plaintiff, *see* 28 U.S.C. § 1345. Venue is proper in this District Court because Dell conducts business in the District and the government agencies that are alleged to have purchased, or processed the purchase of, the Affected Computer Systems are located in the District. *See* 28 U.S.C. § 1391; 31 U.S.C. § 3732(a).

Mr. Adams also alleges that Dell made overt and implied false certifications. The D.C. Circuit has recognized an implied false certification theory which attaches liability if the relator demonstrates that the defendant "withheld information about its noncompliance with material contractual requirements" despite having earlier certified that it would comply with those requirements. *United States v. Sci. Applications Int'l Corp. (SAIC)*, 626 F.3d 1257, 1269 (D.C. Cir. 2010). To establish implied false certification a relator must show "express contractual language specifically linking compliance to eligibility for payment," or allege that "both parties to the contract understood that payment was conditional on compliance with the requirement at issue." *Id*. Additionally, "compliance with the legal requirement in question [must be] material to the government's decision to pay." *Id*. at 1271.

### A. Fraudulent Inducement/False Statement Theory

The Amended Complaint includes a claim under 31 U.S.C. § 3729(a)(1)(B), that Dell made a false statement which fraudulently induced payment by they government. While the Amended Complaint includes a list of items Mr. Dell alleges to be "false claims," *see* Am. Compl. ¶ 24, none of the allegations include a statement made by any of the defendants. Instead, the claims listed are about false certifications, which will be considered under § 3729(a)(1)(A). Having failed to allege a single "statement" made by any of the Dell Defendants, Mr. Adam's claim under § 3729(a)(1)(B) will be dismissed.

### B. False Certification Theory

Under a false certification theory, a relator must allege that (1) defendant certified compliance with a particular contractual condition, (2) defendant failed to comply with that condition, (3) defendant knowingly misrepresented the noncompliance, and (4) compliance was a condition "material to the government's decision to pay." *SAIC*, 626 F.3d at 1269-71; *see also Universal Health Servs., Inc., v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2001 (2016)

("[T]he implied certification theory can be a basis for liability, at least where two conditions are satisfied: first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths."). Not only must a relator comply with the general pleading requirements of Rule 12(b)(6), but "[i]t is well established that Rule 9(b) requires a relator to plea 'the who, what, when, where, and how with respect to the circumstances of' a fraudulent certification." *Pencheng Si*, 71 F. Supp. 3d at 94 (quoting *United States ex rel. Tran v. Comput. Scis. Corp.*, 53 F. Supp. 3d 104, 123 (D.D.C. 2014)).

1. *False or Fraudulent Certification*

Relator alleges that Dell made the following certifications:

- The items sold were as described in the contract, Am. Compl. ¶ 24(a);

- The items were warranted as "free from defects," *id*. ¶ 24(b);

- The items were "merchantable and fit for use for the particular purpose described in the contract," *id*. ¶ 24(c);

- The items complied with the Department of Defense Counterfeit Prevention regulation, *id*. ¶ 24(d);

- The items conformed to the standards of the Federal Standards Program, including minimum security requirements, *id*. ¶ 24(e);

- The items "are fully functional and operate correctly as intended," *id*. ¶ 24(g);

- The items include internal components "that directly support the provided platforms," *id*. ¶ 24(h);

- The items "satisfactorily perform the function for which [they are] intended," *id*. ¶ 24(i); and

- The items "conform to the Dell Defendants' technical representations concerning performance, total system performance and configuration, physical, design and/or functional characteristics and capabilities," *id*. ¶ 24(l).

According to Mr. Adams, the existence of the Hardware Trojan rendered each of the above-listed certifications false.

Assuming, as the Court must on a motion to dismiss, that Mr. Adams' allegations that the Affected Computer Systems contain the Hardware Trojan are true, Dell argues that Mr. Adams has nevertheless failed to allege that the certifications were false because he does not allege how the existence of the Hardware Trojan negates any of the above certifications.

Mr. Adams lists numerous allegedly false certifications, including that Dell gave product warranties to the effect that the computer systems were free from defect. Am. Compl. ¶ 24(b). Although the parties quibble over whether Dell was required to certify that the Affected Computer Systems were without defect and, therefore, that the provision of the Systems to the government and request for payment under the contracts was a false statement or false certification, at this stage the Court must accept the well-plead allegations from Plaintiff-Relator as true. Mr. Adams has alleged that Dell was required to provide defect-free products and has alleged that a defect—the Hardware Trojan—is present in the Affected Computer Systems. *Id*. ¶¶ 9, 24(b). Therefore, accepting the well-plead allegations in the Amended Complaint, Mr. Adams has plausibly alleged a false certification under Rule 12(b)(6).

Federal Rule of Civil Procedure 9(b) requires Mr. Adams to also allege "the time, place and content of the false misrepresentations [and] the fact misrepresented." *Joseph*, 642 F.2d at 1385. Mr. Adams alleges that any of the contracts between the Dell entities and United States government agencies listed in Exhibit D to the Amended Complaint which involved the purchase of any of the Affected Computer Systems listed in Exhibits A and B to the Amended Complaint contained the false certifications and resulted in payment of a false claim by the United States. *See* Exs. A, B, and D, Am. Compl. [Dkt. 49-1]. Dell argues that the list of contracts is not

sufficient under Rule 9(b) to provide Defendants with the ability to adequately challenge the amended complaint.  "The District of Columbia Circuit has made clear that although Rule 9(b) requires the relator to 'state with particularity the circumstances constituting fraud,' [relator] is not required 'to plead representative samples of claims actually submitted to the government.'" *United States ex rel. Groat v. Boston Heart Diagnostics Corp.*, 255 F. Supp. 3d 13, 22 (D.D.C. 2017) (quoting *United States ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 123, 126 (D.C. Cir. 2015)).  Therefore, Mr. Adams' identification of the contracts, relevant Dell entity who entered into the contract, and specific computer systems that contain the Hardware Trojan is sufficient to meet the particularized requirements of Rule 9(b) and to permit Defendants to defend against the claim.

    2. *Materiality*

FCA plaintiffs must "plead[] facts to support allegations of materiality." *Universal Health Servs.*, 136 S. Ct. at 2004 n.6 (rejecting "assertion that materiality is too fact intensive for courts to dismiss False Claims Act cases on a motion to dismiss or at summary judgment").  Under the statute, "material" is defined as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."  31 U.S.C. § 3729(b)(4).  The Supreme Court has recently explained that

> materiality looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation.  In tort law, for instance, a matter is material in only two circumstances:  (1) if a reasonable man would attach importance to in determining his choice of action in the transaction; or (2) if the defendant knew or had reason to know that the recipient of the representation attaches importance to the specific matter in determining his choice of action, even though a reasonable person would not. . . .
>
> The materiality standard is demanding.  The False Claims Act is not an all-purpose antifraud statute, or a vehicle for punishing garden-variety breaches of contract or regulatory violations.  A misrepresentation cannot be deemed material merely because the

> Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance. . . .
>
> In sum, when evaluating materiality under the False Claims Act, the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive. Likewise, proof of materiality can include, but is not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement. Conversely, if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material. Or, if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material.

*Universal Health Servs.*, 136 S. Ct. at 2003-04 (internal quotation marks and citations omitted).

Mr. Adams alleges that the existence of the Hardware Trojan is material because the government agencies who acquired the Affected Computer Systems "operate under a mandate to assure the security of their and their contractors' information technology systems," Am. Compl. ¶ 40, and agencies must comply with a variety of technology policies, *see id*. ¶¶ 40-43. Therefore, because the type of vulnerability introduced by the Hardware Trojan creates a serious risk, the agencies who acquired the Affected Computer Systems would not have done so if they were aware of the existence of the Hardware Trojan.  Taking as given that government agencies are concerned with the security of the computer systems they purchase and that they must comply with various technology policies, Dell argues that the mere existence of a criteria that the systems be secure does not establish that the requirement was material.

Mr. Adams alleges that federal agencies must ensure that their technology acquisitions comply with security requirements, *id*. ¶ 40, and agencies must "correct deficiencies and reduce

or eliminate vulnerabilities," *id*. ¶ 42.  Mr. Adams then concludes that because agencies have these directives compliance is material to the purchase of computer systems.

While it is certainly possible that had the agencies been aware of the existence of the Hardware Trojan they would have decided not to purchase the Dell computer systems, an entitlement to refuse the product based on a violation of a contractual requirement is not always material. *Universal Health Servs.*, 136 S. Ct. at 2004.  Additionally, Mr. Adams does not allege that Dell was required to comply with any of the federal technology policies or that the contracts specified such compliance.  He merely argues that because agencies are expected to comply with security policies, that such a requirement would have been passed along to Dell.  However, even if those requirements were passed along to Dell, the technology policies referenced by Mr. Adams do not require defect-free products, merely that the agencies limit the vulnerabilities and attempt to remedy them if located.  Dell could comply with the policies by providing a computer system with limited vulnerabilities and providing the necessary assistance to eliminate or reduce vulnerabilities as they appear.  Therefore, the existence of a single vulnerability, namely the Hardware Trojan identified by Mr. Adams, would not necessarily be material to the agencies' acceptance of the computer systems and payment under the contracts.  The allegations in the Amended Complaint are insufficient to meet the "demanding" standard of demonstrating materiality.  *Id.* at 2003.[5]

---

[5] Dell's argument that the continued purchase of computer systems by government agencies even after Mr. Adams disclosed the existence of the Hardware Trojan to the United States Attorneys Office for the Eastern District of Texas and other Department of Justice personnel further supports the Court's finding that Mr. Adams has failed to allege materiality.  While the Court cannot and does not attribute knowledge by one agency to all the agencies that purchased computer systems from Dell, the knowledge is at least some evidence that the existence of the Hardware Trojan was not material.

      3.   *Knowing Conduct*

Mr. Adams' Amended Complaint also falters in its allegations of knowledge. The FCA requires that a false claim is made knowingly and defines "knowing" and "knowingly" to mean that

> (A). . . a person, with respect to information –
>
> (i)   has actual knowledge of the information;
>
> (ii)   acts in deliberate ignorance of the truth or falsity of the information; or
>
> (iii) acts in reckless disregard of the truth or falsity of the information.

31 U.S.C. § 3729(b)(1). "Strict enforcement of the FCA's scienter requirement will also help to ensure that ordinary breaches of contract are not converted into FCA liability." *SAIC*, 626 F.3d at 1271. To establish knowledge under an implied certification theory, a relator must allege both "that the defendant knows (1) that it violated a contractual obligation, and (2) that its compliance with that obligation was material to the government's decision to pay." *Id*. Additionally, a relator may not use "collective knowledge" of a multiple individuals within a company to impute knowledge on the company as a whole. *Id*. at 1274 ("[U]nder the FCA, 'collective knowledge' provides an inappropriate basis for proof of scienter because it effectively imposes lability, complete with treble damages and substantial civil penalties, for a type of loose constructive knowledge that is inconsistent with the Act's language, structure, and purpose."). "On the other hand, 'actual knowledge possessed by individual company employees' or a conclusion that 'the company acted recklessly' based on 'the actions of employees or [the company's] systems and structure' would be sufficient." *United States v. DynCorp Int'l, LLC*, 253 F. Supp. 3d 89, 103 (D.D.C. 2017) (quoting *SAIC*, 626 F.3d at 1276).

Mr. Adams' allegations that he was uniquely qualified and singularly able to identify the Hardware Trojan directly conflicts with his allegations that Dell knew or should have known that the Affected Computer Systems contained the Hardware Trojan.  Mr. Adams alleges that Dell's "intimate familiar[ity] with the System Control Chips" and actions taken to configure the Affected Computer Systems would have made Dell aware of the Hardware Trojan.  Am. Compl. ¶ 44.  However, he alleges that his identification of the Hardware Trojan was "gained in substantial part through his independent investigation and development of unique methods and tools."  *Id.* ¶ 5(b).  Additionally, in his opposition, Mr. Adams explains that "[i]t is difficult to detect and correct hardware Trojans," and "against all odds" he was able "through his own testing, in his own law, on his own initiative" to identify the Hardware Trojan.  Opp'n at 5.  Mr. Adams does not explain why, if it was "against all odds" and through "unique methods and tools" that he detected the Hardware Trojan, Dell employees must have had knowledge of the vulnerability or acted in reckless disregard for the truth.  The conflicting nature of Mr. Adams' allegations and their conclusory nature prevents him from stating a plausible claim of knowledge.

Additionally, even if the Court accepts Mr. Adams' conclusion that Dell employees who were involved in the boot and BIOS interactions knew that the computer systems contained undocumented programmable functions, Mr. Adams has not alleged that these employees had reason to believe the existence of those functions violated a material provision in the agreement with the government agencies.  Mr. Adams merely assumes that fact, *see* Am. Compl. ¶ 44(a)(10) ("In short some of Dell Defendants' employees and contractors who know about the Hardware Trojans were also aware of the false express and implied certifications by Dell Defendants to the Government."); and the Court need not accept conclusory allegations in the

Amended Complaint.  Therefore, Mr. Adams has failed to allege that Dell had knowledge of the false claim.[6, 7]

### C. Request for Leave to Amend the Complaint

In his oppositions to Defendants' motion to dismiss, Mr. Adams requests leave to amend his complaint "[i]n the event the Court finds any fault with the First Amended Complaint and grants the motion to dismiss in while or in part."  Opp'n at 40.  As the D.C. Circuit has made clear, "a request for leave [to amend the complaint] must be submitted in the form of a written motion."  *Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006); *see also Williams*, 389 F.3d at 1259 ("[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a).").  Furthermore, Local Civil Rule 15.1 provides each "motion for leave . . . shall be accompanied by an original of the proposed pleading as amended."  Mr. Adams' request is not a proper motion for leave to amend his complaint under Rule 15(a) of the Federal Rules of Civil Procedure or Local Civil Rule 15.1.  His request for leave to amend is therefore improper and will be denied.

---

[6] Mr. Adams' allegations of deliberate ignorance or reckless indifference fair no better.  His allegations that Dell deliberately structured its organization to separate individuals with technical knowledge from those involved in negotiating and fulfilling government sales contracts and, therefore, to prevent the knowledge of technical errors from spilling onto the sales force are implausible.  Corporate separation of technical and sales safe is both common and expected.

[7] Because the Court finds that Mr. Adams fails to satisfy the less stringent pleading requirement of Rule 12(b)(6), it need not address Defendants' other arguments that Mr. Adams fell short of the more stringent Rule 9(b) pleading requirements or that his claim is prohibited by the public disclosure bar.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss will be granted and the Amended Complaint will be dismissed. A memorializing Order accompanies this Memorandum Opinion.

Date: October 8, 2020

_____
THOMAS F. HOGAN
United States District Judge